IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF UP TO $145,500.00 IN IRCO COMMUNITY FEDERAL UNION SUSPENSE ACCOUNT FROM ACCOUNT XXXX4007 OF SHARI SAMPSON | Case No. 5:26-MJ-13 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, Special Agent Thomas W. Atherton, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search and seizure warrant for $145,500 being held in IRCO Community Federal Credit Union, headquartered at 450 Hillcrest Blvd., Phillipsburg, NJ 08865, in a GL Suspense Account, having been transferred from account number XXXX4007, in the name of Shari Sampson.

2. I am a Special Agent (SA) Thomas W. Atherton with the NASA Office of Inspector General, Office of Investigations, Goddard Space Flight Center in Greenbelt Maryland. I have been so employed since November 2009. I graduated from the Federal Law Enforcement Training Center in Glynco, Georgia in 2007. I am also assigned to the Pandemic Response Accountability Committee ("PRAC") which was established to promote transparency and facilitate coordinated oversight of the federal government's COVID-19 pandemic response. The PRAC's 20 member Inspectors General identify major risks that cross program and agency boundaries to detect fraud, waste, abuse, and mismanagement in the more than $5 trillion in COVID-19 spending, including spending via the Paycheck Protection Program (PPP), and Economic Injury Disaster Loan (EIDL) program. This case was also supported by the PRAC's Pandemic Analytics Center of Excellence,

which applies the latest advances in analytic and forensic technologies to help OIGs and law enforcement pursue data-driven pandemic relief fraud investigations. Additionally, I hold a Bachelor's Degree in Criminal Justice from Towson University.

3.  As a Special Agent with NASA, your affiant has been the lead investigator in over a hundred criminal investigations. These investigations have resulted in successful prosecution in federal court. I have attended various classes relative to investigation of federal crimes and I have also received training specifically related to financial crimes related to Paycheck Protection Program loans and Economic Injury Disaster Loans backed by the Small Business Administration.

## FACTS SUPPORTING PROBABLE CAUSE

4.  The facts in this affidavit come from my personal observations, interviews with victims, my training and experience, and information obtained from other agents and witnesses. This affidavit is being prepared for the limited purpose of obtaining a seizure warrant for the asset listed below and is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts needed to support probable cause for this application for a seizure warrant

## OVERVIEW OF INVESTIGATION

5.  Your affiant is assigned to the Pandemic Response Accountability Committee ("PRAC") and received information that $149,900.00 from the Small Business Administration ("SBA") was deposited into the IRCO Community Federal Credit Union account of Shari Sampson. IRCO became concerned regarding the source and use of these funds and reported it to the authorities. Your affiant then began his investigation into the deposit and subsequent movement of the money.

## The COVID-19 Pandemic and the CARES Act

2

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

7. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

8. The Small Business Administration ("SBA") is an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA is headquartered in Washington, DC and maintained its computer servers outside of the state of West Virginia. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

9. As part of this effort, the SBA enabled and provided for loans that came directly from the US Government.

### Economic Injury Disaster Loans

10. One source of relief provided by the CARES Act was the authorization for the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

11. In order to obtain an EIDL, a qualifying business had to submit an online application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods the business sold in the twelve-month period preceding the disaster. In the case of EIDLs, the twelve-month period was that preceding January 31, 2020. The applicant also had to certify that all the information in the application was true and correct to the best of the applicant's

knowledge.

12.     EIDL applications were submitted directly to the SBA online at https://covid19relief.sba.gov/#/ and processed by the agency with support from a government contractor, Rapid Finance. The amount of each loan was determined, based in part, on the information provided by the application about the number of employees, operating expenses for the twelve months prior to the date of the disaster, gross revenue for the twelve months prior to the disaster, and the cost of goods sold for the twelve months prior to the date of the disaster. Any funds issued under EIDL were issued directly by the SBA.

13.     EIDL funds could be used for specific expenses, such as payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

### The EIDL Loan

14.     Shari Sampson ("Sampson"), date of birth February 6, 1961, resided at 6 5th Street, Apartment 204, Wheeling, West Virginia in 2020. Shari maintained IRCO Community Federal Credit Union account number XXXX4007 while she resided in Wheeling, West Virginia. Despite no IRCO locations being in Wheeling, West Virginia, Sampson was able to access her accounts via ATMs, electronically, or by telephone.

15.     On July 28, 2020, a wire for $149,900 was deposited into Sampson's account ending 4007 from "SBAD TREAS 310" for "Karen Manufacturing C". Your Affiant knows from his work with PRAC that when "SBAD TREAS 310" is the originator of a wire transfer, the funds are an EIDL loan from the SBA.

16.     Your Affiant obtained documentation from the SBA that indicated that an EIDL loan number was 8396338106, application number 3311859147, was awarded to "Karen Manufacturing" in the amount of $150,000 from the SBA, processed on July 27, 2020 and distributed on July 28, 2020 to the Sampson account ending in 4007. Loan documents reflect that

the owner/operator of "Karen Manufacturing" is Karen Tandaric, DOB XX/XX/1956, SSN XXX-XX-1378 of Spruce Lane in New Carlisle, Indiana. The loan application reports that "Karen Manufacturing" is a manufacturing company with 350 employees. While the loan awarded was for $150,000, only $149,900 was transferred as $100.00 was withheld for loan costs.

17. Once the $149,900 was deposited into Sampson's account, Sampson withdrew $4,400 in cash from ATMs via her debit card. Sampson also contacted the bank and requested three $20,000 checks be issued to her from her account and mailed to her at her address in Wheeling, West Virginia.

18. IRCO Community Federal Credit Union employees spoke with Sampson on multiple occasions regarding the deposit and the withdrawals from her account. Sampson disclosed to bank employees that she had provided her "fiancé" her bank account information, which was how the deposit of $149,900 was made to her account, and that she had withdrawn $4,400 to send to her "fiancé" in addition to requesting $60,000 in checks to be sent to her in West Virginia, to be given, ultimately, to her "fiancé." Prior to the checks being negotiated, Sampson realized that she was being scammed and the $60,000 was returned to her account.

19. As a result of this realization, IRCO placed a hold on the $145,500 remaining in Sampson's account ending in 4007 and that amount remains sequestered to today in a GL suspense account in IRCO Federal Credit Union.

20. Sampson died December 6, 2020.

21. Your affiant reviewed information related to the EIDL loan application and interviewed the purported owner/operator of "Karen Manufacturing", Karen Tandaric ("Tandaric") at her residence. Tandaric stated that she never owned or operated a business and that she had never heard of "Karen Manufacturing Company." Tandaric stated that she was

currently retired, but prior to that, she worked as a legal assistant and had never run a manufacturing company. The purported address of "Karen Manufacturing" is her primary residence.

22. Tandaric stated that she had never heard of a PPP or EIDL loan and that she had never received any funding from the SBA. Your affiant showed Tandaric the information in the EIDL loan application containing her Personal Identifying Information and Tandaric acknowledged that the social security, date of birth and address on the EIDL loan application were hers, however, she had never applied for an EIDL Loan and never signed a Promissory Note for an EIDL Loan. Tandaric further stated that she did not know any individual named Shari Sampson in West Virginia, nor was she in business with anyone in West Virgina.

23. As part of this investigation, your Affiant also learned that another application for an EIDL Loan was submitted using the same address as "Karen Manufacturing", for "Thomas Tandaric" however, that EIDL loan was not funded.

24. Your affiant also learned that two other EIDL loan applications were submitted to the SBA, one for Davidmarion Manufacturing Company and one for Dieter Manufacturing Company, with both reporting their bank account as Sampson's IRCO Federal Credit Union account ending in 4007. Neither of these loans were funded.

25. Your affiant has determined that the representations made in the EIDL loan application related to "Karen Manufacturing" ownership, location and employees are false, and only through these false representations were funds from the SBA deposited into Sampson's bank account. Sampson's ATM withdrawals and calls to the bank for checks caused wires to be transmitted from Wheeling, West Virginia to the Bank in New Jersey. Additionally, by requesting

the $20,000 checks to be sent to her, Sampson caused items to be sent through U.S. Mail, involving fraudulently obtained funds.

## PROPERTY TO BE SEIZED

26. This affidavit is made in support of an application for seizure warrant for the seizure of $145,500 in the GL suspense account, originating in the account of Sampson ending in 4007.

## AUTHORITY FOR SEIZURE AND FORFEITURE

27. This affidavit is being submitted to establish probable cause to believe that the above-described property is subject to forfeiture to the United States based upon the following theories:

    a. Pursuant to 28 U.S.C. Sections 2461(c), Title 18 U.S.C. Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21 U.S.C. Section 853 that forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, U.S.C. Sections 1341, 1343, or a conspiracy to violate such offenses;

    b. Pursuant to 18 U.S.C. Sections 981(a)(1)(A) and 982(a)(1) because the property was involved in a money laundering transactions or is property traceable to such offense.

28. Based upon your affiant's training and experience, your affiant knows that property subject to forfeiture may be seized pursuant to a warrant based on probable cause. Your affiant has been advised that "probable cause" with respect to asset seizure and forfeiture in this case merely requires the court to make a practical decision whether, given all circumstances, a fair probability exists that the property the government seeks to forfeit constitutes, or is derived from, proceeds

traceable to a violation of Title 18, U.S.C. Sections 1341 (Mail Fraud), 1343 (Wire Fraud), or 1349 (A conspiracy to violate such offense) or a violation of Title 18 U.S.C. 1956 (Money Laudering).

## JURISDICTION TO ISSUE OUT-OF-DISTRICT WARRANT

29.  18 U.S.C. § 981(b)(3), provides that a seizure warrant may be issued by a "judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found . . ." Accordingly, issuance of the seizure warrant in this district is appropriate under the above statute, as this is the district "in which . . . the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).

30.  21 U.S.C. § 853(1) authorized courts to enter orders "without regard to the location of any property which may be subject to forfeiture under this section, or which has been ordered forfeited under this section." *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1318 (M.D. Fla. 2001) ("Congress has conferred jurisdiction on the district courts to enter orders concerning forfeiture without regard to the location of the forfeited property.").

## CONCLUSION

31.  For the above-stated reasons, your affiant has probable cause that the funds transferred into Sampson's account from the SBA were obtained through a scheme to defraud whereby the funds were obtained through material misrepresentation and involving the use of the wires and the mail. Furthermore, the use of Sampson's account and subsequent withdrawals, both by ATM and by check to be sent through the mail prior to transfer to Sampson's "fiancé" involved the concealment of funds obtained through a specified unlawful activity.

32.  Subsequent withdrawals and transfers, in addition to bank documents, reflet that SAMPSON is the true owner of the IRCO Community Federal Credit Union account number

XXXX4007, held in the name of Shari Sampson, as incorporated in 28 U.S.C. Sections 2461(c), Title 18 U.S.C. Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21 U.S.C. Section 853 that forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, U.S.C. Section 1341, 1343, or a conspiracy to violate such offense.

33.     The language of 21 U.S.C. 853(f) requires the court to issue a seizure warrant based upon probable cause for forfeiture, and the finding that a protective order would be inadequate. A protective order under 21 U.S.C. § 853(e) is not sufficient to ensure the availability of these types of assets for forfeiture.

34.     Accordingly, your Affiant requests a warrant to be issued, for the purpose of forfeiture, for $145,500 held in the GL Suspense account, originally deposited in IRCO Community Federal Credit Union account number XXX4007, held in the name of Shari Sampson.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

_____
Special Agent (SA) Thomas W. Atherton


Sworn to and Subscribed before me on __2/11/__, 2026

_____
James P Mazzone
United States Magistrate Judge
Northern District of West Virginia

9